CITY OF COLUMBUS, APPELLEE, *v.* HAUGHT, APPELLANT.

(No. 86AP-1078—Decided July 9, 1987.)

*Ronald J. O'Brien,* city attorney, *James J. Fais,* city prosecutor, and *David Tingley,* for appellee.

*William S. Lazarow,* for appellant.

BRYANT, J. Defendant-appellant, Michael W. Haught, appeals from an order of the trial court suspending his driving privileges pursuant to R.C. 4509.101. Appellant's single assignment of error is that R.C. 4509.101 is unconstitutional in requiring that a court suspend his driving privileges, without any option for occupational privileges, due to appellant's failure to prove financial responsibility in accordance with R.C. 4509.101.

On September 27, 1986, appellant was charged with violation of Columbus City Code ("C.C.") 2133.01(b)(2): appellant tested .123 on a breath test, thereby exceeding the legal limit of breath-alcohol content. On October 28, 1986, appellant entered a guilty plea to the "per se" charge, with all other charges being dismissed. The court found the appellant guilty and sentenced him accordingly. At the same time, the court inquired as to the appellant's financial responsibility under R.C. 4509.101. Appellant advised that, although he was covered by collision insurance through his credit union, he had recently learned that he did not have liability insurance at the time of the offense for which he was cited. As a result, the trial court imposed a ninety-day driver's rights suspension pursuant to R.C. 4509.101(B)(1). In accordance with R.C. 4509.101(A)(2)(a), the court refused to grant appellant occupational privileges.

Appellant now asserts that R.C. 4509.101 is unconstitutional in violation of the Equal Protection Clauses of the Ohio and United States Constitutions. More particularly, appellant asserts that this section unconstitutionally creates a separate class of people subject to license suspensions who may not obtain any occupational driving privileges. We disagree with appellant's contentions and affirm the order of the trial court.

Preliminarily we note that appellant's appeal presents a facial attack to the constitutionality of R.C. 4509.101. Appellant does not address the constitutionality of R.C. 4509.101 in its application to particular circumstances, and we do not decide that issue herein.

Analysis of claims for violation of equal protection generally fall within two categories: the strict scrutiny standard, as applied in *Loving* v. *Virginia* (1967), 388 U.S. 1, or the more lenient, rational basis test, as described in *San Antonio Indep. School Dist.* v. *Rodriguez* (1973), 411 U.S. 1. Appellant properly concedes that our analysis of R.C. 4509.101 falls under the rational basis test, as the facts herein do not present a suspect classification requiring examination under the strict scrutiny standard.

Under the rational basis test, the challenged state action must rationally further a legitimate state purpose or interest. *Rodriguez, supra,* at 55. R.C. 4509.101(K) reveals the state purpose or interest involved in provisions of that section:

"The purpose of this section is to encourage the maintenance of proof of financial responsibility with respect to the operation of motor vehicles on the highways of this state, so as to minimize those situations in which persons are not compensated for injuries and

damages sustained in motor vehicle accidents. The general assembly finds that this section contains reasonable civil penalties and procedures for achieving this purpose."

To further that purpose, R.C. 4509.101(B)(1) provides in part:

"Any defendant, who is charged with a traffic offense specified in Traffic Rule 13(B) that requires an appearance in court, shall be required to verify the existence of proof of financial responsibility covering the operation of the vehicle *at the time of the offense* in accordance with this section. * * * [Emphasis added.]

"* * *

"If a defendant who pleads guilty or is found guilty, fails to verify existence of proof of financial responsibility as required under this section, the court shall do all of the following:

"* * *

"(b) Order the suspension and impoundment of the license of the defendant required under division (A)(2)(a) of this section[.]"

R.C. 4509.101(A)(2)(a) states in part:

"Suspension of the person's operating privileges * * *, which suspension shall be for a period of not less than ninety days and shall not be subject to revocation, suspension, *or occupational or other limited operating privileges*[.]" (Emphasis added.)

Given the foregoing, we must determine whether the provisions of R.C. 4509.101 denying occupational driving privileges to those unable to prove financial responsibility thereunder rationally further the stated purpose. We find that they do.

As set forth in R.C. 4509.101, those who drive without the requisite financial responsibility are subject to the complete loss of driving privileges for ninety days with no occupational privileges. Defendant asserts there is no rational basis for such penalties,

especially if he could prove insurance at the time of his court appearance. However, to permit a person driving without the required financial responsibility to circumvent the penalties of R.C. 4509.101 by obtaining insurance following a traffic citation and making proof as of the date of hearing, as opposed to the date of the offense, encourages only those actually cited with a traffic violation to obtain insurance. Clearly, that result falls short of achieving the purposes of R.C. 4509. 101, especially the intent to minimize those instances where persons are not compensated for injuries and damages arising out of accidents involving uninsured drivers. Accordingly, to the extent the appellant asserts that insurance obtained following the offense, but prior to the date of a court appearance, would be sufficient to rationally further the state's interest, we reject that contention.

Appellant also contends that the legislature's precluding *any* opportunity for occupational driving privileges violates the rational basis test. Again, however, the opportunity to obtain driving privileges at a court appearance despite failure to prove financial responsibility at the time of the offense would only encourage Ohio drivers to obtain the requisite insurance in order to procure the occupational privileges following a citation. Indeed, the granting of occupational privileges is no less detrimental to the achievement of R.C. 4509.101(K) purposes than would be the return of all driving privileges on proof of financial responsibility obtained subsequent to the offense but prior to a court appearance. The intent of the legislature is not to encourage violators to obtain insurance prior to a hearing, but to encourage all drivers to obtain the required insurance prior to being involved in an accident and receiving a traffic citation. By clearly stating that no occupational privileges

of any kind will be granted to those without the requisite insurance at the time of the offense, the legislature has created circumstances which encourage maximum achievement of the stated interest.

Anything less than a total prohibition of occupational privileges is ineffective. To grant occupational privileges in limited circumstances as, for example, when an uninsured motorist receives a Traf. R. 13(B) citation but causes no injury or damages, is untenable. Such a plan would diminish a motorist's incentive to obtain insurance before driving by encouraging the uninsured motorist to "take the chance" he or she will be involved in a personal injury or property damage traffic violation. Clearly, the state purpose is not only not furthered, but hindered by premeditated risk taking. Accordingly, the procedure set forth in R.C. 4509.101 is rationally related to furtherance of a legitimate state interest and, therefore, constitutional under the rational basis test set forth in *Rodriguez, supra.*

The Ohio Supreme Court has recently declared portions of this statute unconstitutional. See *South Euclid* v. *Jemison* (1986), 28 Ohio St. 3d 157, 28 OBR 250, 503 N.E. 2d 136. However, in doing so, the Supreme Court specifically noted that the particular provisions therein involved, not present in the matter before us, are severable from the rest of the statute. Accordingly, while specific provisions of the statute are unconstitutional under *Jemison,* the remainder of the statute is not rendered unenforceable by *Jemison.*

Hence, in accordance with the foregoing, we overrule the appellant's assignment of error, and affirm the order of the trial court.

*Judgment affirmed.*

WHITESIDE and YOUNG, JJ. concur.